JOHN BOGNI & others *vs.* GIOVANNI PEROTTI & others.

Suffolk. January 19, 1916. — May 18, 1916.

Present: RUGG, C. J., BRALEY, DE COURCY, PIERCE, & CARROLL, JJ.

*Constitutional Law. Labor. Labor Union. Equity Jurisdiction.*

The right to work is property and one cannot be deprived of it by legislative enact-
ment, it being protected by the Fourteenth Amendment to the Constitution
of the United States and by the guaranties contained in the Massachusetts
Declaration of Rights.

The provisions contained in St. 1914, c. 778, § 2, declaring that "in construing this
act" the right to labor and to make and modify contracts to work "shall be
held and construed to be a personal and not a property right," and prohibiting
the granting of an injunction to enforce such a right "where no irreparable
damage is about to be committed upon the property or property right of
either" the employee or the employer, are unconstitutional and void.

St. 1914, c. 778, which provides in substance that the property right to labor for
any individual or number of individuals associated together shall not be recog-
nized in equity as property when assailed by a labor combination, unless irrepa-
rable damage is about to be committed upon property or a property right as
there defined, would, if enforceable, deprive those employed in labor of "the
equal protection of the laws" guaranteed by the Fourteenth Amendment of the
Constitution of the United States and by the equivalent provisions contained
in our Declaration of Rights.

The power of courts to afford relief by injunction cannot be impaired by the Legis-
lature in such a way as to prevent its use in favor of one property owner when it
is preserved for the benefit of other property owners.

This court, having held St. 1914, c. 778, to be unconstitutional on the grounds stated
above, found it unnecessary to consider whether it also was unconstitutional
by reason of the preference attempted to be conferred upon combinations of
laborers.

RUGG, C. J. This is a contest between two labor unions seek-
ing similar employment as laborers in the building trades. The
plaintiffs are members of the General Laborers Industrial Union

No. 324, a voluntary unincorporated association, which is a branch of the national organization known as the Industrial Workers of the World.' The defendants are members of the Hod Carriers, Building and Common Laborers Union, Local 209, a like association, affiliated with a national organization known as the American Federation of Labor. The plaintiffs in their bill allege that there have been, are now and will be numerous buildings under construction in Boston and its vicinity, in connection with which they have been, are now and will be engaged and ready to offer their services in profitable, useful and pleasant employment, and that they all have no means of supporting themselves except through such employment; that the defendants, well aware of the plaintiffs' conditions in respect of such employment, have conspired to deprive the plaintiffs of their employment and have threatened that, if they did not desert their own organization and cease to be members thereof and join the organization of the defendants, the latter would cause them to be discharged from their employment, and that the defendants have used unlawful pressure upon and have intimidated certain owners of property by threats of sympathetic strikes and otherwise not to employ the plaintiffs and in some instances by these means have caused the discharge of the plaintiffs from employment.

The conduct thus described plainly was calculated to harm the rights of the plaintiffs. Under general principles of the common law, which now have become well settled, the plaintiffs' bill sets out a wrong against their rights committed by the defendants, for which ordinarily relief would be afforded in equity by injunction, *Plant* v. *Woods*, 176 Mass. 492, *Pickett* v. *Walsh*, 192 Mass. 572, *De Minico* v. *Craig*, 207 Mass. 593, *Hanson* v. *Innis*, 211 Mass. 301, *Folsom* v. *Lewis*, 208 Mass. 336, *New England Cement Gun Co.* v. *McGivern*, 218 Mass. 198, 203, as well as at law, *Berry* v. *Donovan*, 188 Mass. 353.

But the defendants justify their conduct as legal under St. 1914, c. 778.*

---

* That statute is as follows:

"An Act to make lawful certain agreements between employees and laborers, and to limit the issuing of injunctions in certain cases.

"Section 1. It shall not be unlawful for persons employed or seeking employment to enter into any arrangements, agreements or combinations with

The words of § 2 declare unmistakably that the right to labor and to make and to modify contracts to work shall no longer be a property right, so far as that question arises "in construing this act." These last four words are not a limitation upon the broad enactment that the right to labor and to contract respecting labor shall not be property, for the reason that the right to work, if it cannot be protected as are other rights of property, ceases to have the attributes of other property in all their fullness and ceases to that extent to be property. A declaration of a right coupled with a prohibition against its protection by ordinary means renders the right a vain and insubstantial shadow.

That the right to work is property cannot be regarded longer an open question. It was held in *Cornellier* v. *Haverhill Shoe Manufacturers' Association*, 221 Mass. 554, at page 560, that "The right to labor and to its protection from unlawful interference is a constitutional as well as a common law right." It was said in *State*

---

the view of lessening the hours of labor or of increasing their wages or bettering their condition; and no restraining order or injunction shall be granted by any court of the Commonwealth or by any judge thereof in any case between an employer and employees, or between employers and employees, or between persons employed and persons seeking employment, or involving or growing out of a dispute concerning terms or conditions of employment, or any act or acts done in pursuance thereof, unless such order or injunction be necessary to prevent irreparable injury to property or to a property right of the party making the application, for which there is no adequate remedy at law; and such property or property right shall be particularly described in the application, which shall be sworn to by the applicant or by his agent or attorney.

"Section 2. In construing this act, the right to enter into the relation of employer and employee, to change that relation, and to assume and create a new relation for employer and employee, and to perform and carry on business in such relation with any person in any place, or to do work and labor as an employee, shall be held and construed to be a personal and not a property right. In all cases involving the violation of the contract of employment either by the employee or employer where no irreparable damage is about to be committed upon the property or property right of either, no injunction shall be granted but the parties shall be left to their remedy at law.

"Section 3. No persons who are employed or seeking employment or other labor shall be indicted, prosecuted or tried in any court of the Commonwealth for entering into any arrangement, agreement, or combination between themselves as such employees or laborers, made with a view of lessening the number of hours of labor or increasing their wages or bettering their condition, or for any act done in pursuance thereof, unless such act is in itself unlawful."

v. *Stewart,* 59 Vt. 273, 289, "The labor and skill of the workman, be it of high or low degree, the plant of the manufacturer, the equipment of the farmer, the investments of commerce, are all in equal sense property." In the *Slaughter-House cases,* 16 Wall. 36, 127, in the dissenting opinion of Mr. Justice Swayne, but respecting a subject as to which there was no controversy, occur these words: "Labor is property, and as such merits protection. The right to make it available is next in importance to the rights of life and liberty." It was settled that the right to labor and to make contracts to work is a property right by *Adair* v. *United States,* 208 U. S. 161, 173–175, and *Coppage* v. *Kansas,* 236 U. S. 1, 10. Controversy on that subject before this court must be regarded as put at rest by these decisions. The right to work, therefore, is property. One cannot be deprived of it by simple mandate of the Legislature. It is protected by the Fourteenth Amendment to the Constitution of the United States and by numerous guaranties of our Constitution. It is as much property as the more obvious forms of goods and merchandise, stocks and bonds. That it may be also a part of the liberty of the citizen does not affect its character as property. It was said in *Coppage* v. *Kansas,* 236 U. S. 1, at page 14, "Included in the right of personal liberty and the right of private property — partaking of the nature of each — is the right to make contracts for the acquisition of property. Chief among such contracts is that of personal employment, by which labor and other services are exchanged for money or other forms of property. If this right be struck down or arbitrarily interfered with, there is a substantial impairment of liberty in the long-established constitutional sense."

No discussion is required to show that it is beyond the power of the Legislature, under constitutions which guard the individual against being deprived of property without due process of law, to declare without any process at all that a well recognized kind of property shall no longer be property. "Lawful property cannot be confiscated" under the guise of a statute. *Durgin* v. *Minot,* 203 Mass. 26, 28. When legislative attempts to compel the deprivation of certain comparatively small sums of money without due process of law invariably fail, see for example, *Northern Pacific Railway* v. *North Dakota,* 236 U. S. 585; *Great Northern Railway* v. *Minnesota,* 238 U. S. 340; *Chicago, Milwaukee & St.*

*Paul Railroad* v. *Wisconsin*, 238 U. S. 491; *Louisville & Nashville Railroad* v. *Central Stock Yards Co.* 212 U. S. 132, it is manifest that something recognized as property by the law of the land cannot be extinguished utterly.

A further effect of the present statute is to deprive the plaintiffs of the equal protection of the laws. The statute provides in substance that the property right to labor of any individual or number of individuals associated together shall not be recognized in equity as property when assailed by a labor combination, unless irreparable damage is about to be committed upon property or a property right as there defined and that no relief by injunction shall be granted save in like cases for which there is no relief at law. That a man cannot resort to equity respecting his property right to work in the ordinary case simply because he is a laboring man, and that he cannot have the benefit of an injunction when such remedies are open freely to owners of other kinds of property, needs scarcely more than a statement to demonstrate that such man is not guarded in his property rights under the law to the same extent as others.

If a laborer must stand helpless in a court while others there receive protection respecting the same general subject which is denied to him, it cannot be said with a due regard to the meaning of constitutional guaranties that he is afforded "the equal protection of the laws" within the Fourteenth Amendment to the Constitution of the United States and similar provisions of our own Constitution. The right to make contracts to earn money by labor is at least as essential to the laborer as is any property right to other members of society. If as much protection is not given by the laws to this property, which often may be the owner's only substantial asset, as is given other kinds of property, the laborer stands on a plane inferior to that of other property owners. Absolute equality before the law is a fundamental principle of our own Constitution. To the extent that the laborer is not given the same security to his property by the law that is granted to the landowner or capitalist, to that extent discrimination is exercised against him. It is an essential element of equal protection of the laws that each person shall possess the unhampered right to assert in the courts his rights, without discrimination, by the same processes against those who wrong him as are open to every other person. The courts must be open to all upon the same terms. No

obstacles can be thrown in the way of some which are not interposed in the path of others. Recourse to the law by all alike without partiality or favor, for the vindication of rights and the redress of wrongs, is essential to equality before the law. The constitutional principles are discussed in *Opinions of the Justices*, 211 Mass. 618; 220 Mass. 627; 207 Mass. 601; 207 Mass. 606, 611, *Smith* v. *Texas*, 233 U. S. 630, *Atchison, Topeka & Santa Fe Railway* v. *Vosburg*, 238 U.S. 56, *Gulf, California, Colorado & Santa Fe Railway* v. *Ellis*, 165 U. S. 150, *Chicago, Milwaukee & St. Paul Railway* v. *Polt*, 232 U. S. 165, *St. Louis, Iron Mountain & Southern Railway* v. *Wynne*, 224 U. S. 354.

Doubtless the Legislature may make many classifications in laws which regulate conduct and to some extent restrict freedom. So long as these have some rational connection with what may be thought to be the public health, safety or morals, or in a restricted sense, "so as not to include everything that might be enacted on grounds of mere expediency," the public welfare, they offend no constitutional provision. *Commonwealth* v. *Strauss*, 191 Mass. 545, 550. Weekly payment laws, employers' liability acts, workmen's compensation acts, inspection laws based on the number of employees, and numerous statutes similar in principle have been upheld. See *Commonwealth* v. *Libbey*, 216 Mass. 356; *Young* v. *Duncan*, 218 Mass. 346, 353; *Booth* v. *Indiana*, 237 U. S. 391; and *Tanner* v. *Little*, 240 U. S. 369, where many cases are collected. But all these and like statutes are quite different from one declaring that the laboring man either alone or in association with his fellows shall, as to his property right to work, be put on a footing of inferiority as compared with owners of other kinds of property when he appears in court respecting that property right. It is primary and fundamental in any correct conception of justice that the laboring man stands on a level equal with all others before the courts. Whatever may be his social or economic condition outside, when he enters the court the law can permit no rule to fetter him in the prosecution of his claims or the preservation of his rights which does not apply equally to all others respecting the same kinds of claims and rights.

It has been argued that since the equitable jurisdiction of the court is largely statutory, *Parker* v. *Simpson*, 180 Mass. 334, 350, it may be curtailed by the Legislature in respect of the power to

grant injunctions. It is one thing to affect the scope of equity by extending or restricting the branches of that jurisprudence which courts may administer; it is a quite different matter to enact that some citizens may resort to it while others may not.

Without discussing other aspects of this proposition, it is enough to say that the power of courts to afford injunctive relief cannot be impaired by the Legislature in such a way as to prevent its use in favor of one property owner, when it is preserved for the benefit of other property owners. It is an elementary principle of equity that an injunction never is issued except to prevent irreparable injury. If the statute means anything more than this, there would be other difficulties about its construction which need not now be elaborated.

Associations of laborers, to accomplish lawful objects by legal means, have been recognized and protected in this Commonwealth, at least since the decision of *Commonwealth* v. *Hunt*, 4 Met. 111, in 1842, now nearly seventy-five years ago. But it is not necessary to consider whether the preference attempted to be conferred upon combinations of laborers by the act means anything more than that, and, if it does, whether it comes within the condemnation of the principles expounded at length in *Adair* v. *United States*, 208 U. S. 161, and *Coppage* v. *Kansas*, 236 U. S. 1, where statutes designed to secure to members of labor unions immunity from discharge on that ground were held to violate the Federal Constitution. See, further, *State* v. *Julow*, 129 Mo. 163; *State* v. *Kreutzberg*, 114 Wis. 530; *Marshall & Bruce Co.* v. *Nashville*, 109 Tenn. 495; *Lewis* v. *Board of Education of Detroit*, 139 Mich. 306.

It has been urged, also, that, the plaintiffs being laborers and the statute having been passed for the benefit of laborers, the plaintiffs as such are not in a position to question its constitutionality. Reliance is placed on cases like *Standard Stock Food Co.* v. *Wright*, 225 U. S. 540, where plaintiffs who have suffered no harm by reason of the provisions of a statute have been precluded from challenging its validity. The plaintiffs by their bill set forth a plain wrong done to themselves by the defendants. The invasion of their constitutional right is direct and substantial. They have an indubitable standing to raise the constitutionality of a statute which shelters such conduct.

Recognizing every presumption in favor of the validity of statutes enacted by the Legislature, we are all of opinion that the instant statute cannot be sustained. The demurrer * which is based on it should be overruled.

*Decree reversed.*

*T. G. Connolly,* for the plaintiffs, submitted a brief.

*F. W. Mansfield,* (*J. A. Donovan* with him,) for the defendants.

* The demurrer was argued before *Wait,* J., who made an order sustaining the demurrer, and later, it appearing that the plaintiffs did not ask to amend the material allegations of their bill, made a final decree dismissing the bill. The defendants appealed.