TERRE HAUTE BREWING CO., INC., *v.* LIQUOR CONTROL
COMMISSION.

1. Intoxicating Liquors—Powers of Liquor Control Commission
—Approval of Labels.

Except as limited or defined by statute, the liquor control com-
mission is vested by the Constitution with plenary power to
control alcoholic beverage traffic in this State, and provision
of statute that alcoholic liquor should be "deemed to be mis-
branded when not plainly labeled, marked, or otherwise desig-
nated as shall be prescribed by the rules and regulations of
the commission" does not restrict test of approvability of a
label to whether or not alcoholic liquor carrying such a label
would be a plainly labeled alcoholic liquor (Const. 1908, art. 16,
§ 11, as amended in 1932; Act No. 8, §§ 1, 7, 46, Pub. Acts
1933 [Ex. Sess.], as amended by Act No. 281, Pub. Acts 1937).

2. Same—Limitation on Powers of Liquor Control Commission—
Constitution—Statutes.

The constitutional provision that the liquor control commission
"shall exercise complete control of all alcoholic beverage
traffic within this State, including the retail sales thereof,"
is limited only by express provisions or necessary implications
in the statute and amendments thereof by which the commission
was created and its powers, duties, and limitations prescribed
(Const. 1908, art. 16, § 11, as amended in 1932; Act No. 8,
Pub. Acts 1933 [Ex. Sess.], as amended).

3. Same—Labels—Confusion—Fraud.

Requirement that there be proper labeling of any alcoholic bev-
erage sold in this State being but a phase of the proper control
of the alcoholic beverage traffic and of the retail sales thereof,
the liquor control commission is amply justified in declining
to give its approval to any label which is of such a character
that it may readily lead to confusion and the possible perpetra-
tion of fraud in the sales of alcoholic liquors (Act No. 8, § 46,
Pub. Acts 1933 [Ex. Sess.]).

4. SAME—BEER LABELS—APPROVAL BY LIQUOR CONTROL COMMISSION. Proposed label for beer in which one of the outstanding features is so similar to that of a previously approved label for beer sold by another licensee as to tend to lead to confusion therewith *held,* to justify refusal of approval of the proposed label by the liquor control commission, even though the proposed label should merely be required to be a ''plain'' label since it would lead to confusion as between various alcoholic beverages which are manufactured and sold by different licensees (Act No. 8, § 46, Pub. Acts 1933 [Ex. Sess.]).

5. SAME—LABELS—TRADE MARKS AND TRADE NAMES—VESTED RIGHTS.
    Adjudication on review of decision of liquor control commission withholding approval of proposed label for beer because of its similarity to label used by another licensee does not finally adjudicate the property rights in a trade name, trade mark, or trade label; one having vested rights therein having, as against an infringer, his remedy in a proper forum, and the adjudication of such an issue would clearly bear upon commission's duty in a subsequent application for approval of a label containing such trade name or trade mark (Act No. 8, § 46, Pub. Acts 1933 [Ex. Sess.]).

6. SAME—RULES AND REGULATIONS—EQUAL PROTECTION OF LAWS—LABELS—PRESUMPTION AS TO OFFICIAL ACTION.
    Rule of liquor control commission requiring that any label used by a licensee be submitted to the commission for approval before use in this State *held,* not a denial of the equal protection of the law where, in case in which rule is attacked, the commission did not arbitrarily reject the proposed label, and it is to be presumed that a constitutionally-created governmental body or agency will properly perform its duties (U. S. Const. Am. 14, § 1; Mich. Const. 1908, art. 16, § 11, as amended in 1932; Act No. 8, §§ 7, 46, Pub. Acts 1933 [Ex. Sess.], as amended by Act No. 281, Pub. Acts 1937; Liquor Control Commission Rule No. 11).

BUTZEL, C. J., and BUSHNELL and POTTER, JJ., dissenting.

Petition by Terre Haute Brewing Company, Incorporated, an Indiana Corporation, for a writ of mandamus to compel the Liquor Control Commission and commissioners to approve a certain label for plaintiff's use in this State. Submitted Septem-

ber 25, 1939. (Calendar No. 40,603.) Writ denied November 9, 1939. Rehearing denied December 20, 1939.

*Rosenburg, Painter & Cristy,* for petitioner.

*Thomas Read,* Attorney General, and *Edmund E. Shepherd,* Assistant Attorney General, for defendant Liquor Control Commission.

*Glenn C. Gillespie* and *Race, Haas & Allen (C. Redman Moon,* of counsel), *amici curiæ.*

NORTH, J. Upon plaintiff's petition and our order to show why mandamus should not issue requiring the liquor control commission to approve plaintiff's "Gold Label" beer label, defendant made a return. The question is whether on the record thus made plaintiff is entitled to mandamus.

Plaintiff, an Indiana corporation engaged in the manufacture and sale of malt beverages, petitioned the Michigan liquor control commission, herein designated as defendant, to approve a label to be used on plaintiff's products sold in Michigan. Theretofore plaintiff's label had been approved by the Federal Alcohol Administration of the Federal treasury department. Plaintiff's application was opposed by the Goebel Brewing Company which four days earlier had secured approval by the liquor control commission of its "Gold Label" beer label. The label of the Goebel company embodied near the top in rather a conspicuous form the expression "Gold Label." The label of which plaintiff seeks approval has the expression "Gold Label" centrally located and in letters which make it pronouncedly conspicuous. From the defendant's return it appears that refusal to approve plaintiff's label was in consequence of the objection "by the Goebel Brewing Company of Detroit, Michigan, as being too similar

to their label on which they are carrying on an advertising campaign.''

Primarily plaintiff's position is that since the label it submitted for approval is a ''plain label,'' plaintiff is entitled to have it approved as a matter of right. This contention is based upon plaintiff's construction of the statute governing the Michigan liquor control commission, and has to do with its powers and limitations.

The constitutional provision for a liquor control commission, so far as is pertinent here, reads as follows:

''The legislature may by law establish a liquor control commission, who, subject to statutory limitations, shall exercise complete control of the alcoholic beverage traffic within this State, including the retail sales thereof.'' Const. (1908), art. 16, § 11, as amended in 1932.

The statute under which the Michigan liquor control commission is organized, as to its title and the parts here pertinent, reads:

''An act to create a liquor control commission for the control of the alcoholic beverage traffic within the State of Michigan, and to prescribe its powers, duties and limitations; * * * (and) to provide for the licensing and taxation thereof.'' (Act No. 8, Pub. Acts 1933 [Ex. Sess.], as amended by Act No. 281, Pub. Acts 1937).

''SEC. 7. The commission shall adopt rules and regulations governing the carrying out of this act and supplemental thereto, within the provisions of this act.'' (Act No. 8, § 7, Pub. Acts 1933 [Ex. Sess.], as amended by Act No. 281, Pub. Acts 1937 [Stat. Ann. 1939 Cum. Supp. § 18.977]).

''SEC. 46. Any person who, by himself or by his agent or servant, shall sell, offer for sale, expose for sale, or have in possession with intent to sell, any

alcoholic liquor that is adulterated or misbranded within the meaning of this section shall be guilty of a violation of this act.  *  *  *  For the purpose of this section alcoholic liquor shall be deemed to be misbranded when not *plainly* labeled, marked or otherwise designated *as shall be prescribed by the rules and regulations of the commission.*" (Act No. 8, § 46, Pub. Acts 1933 [Ex. Sess.] [Stat. Ann. § 18.1017]).

Obviously in an attempt to conform with section 7 above quoted, the commission, as appears from its return, adopted, as section 11 of its rules and regulations, as follows:

"Every brewery selling beer or malt beverages in Michigan shall submit to the commission for approval three copies of each label used on beer or malt beverages sold in this State and the commission hereby reserves the right to approve or disapprove any such labels to be used upon alcoholic beverages sold in the State of Michigan."

Plaintiff's contention is more particularly indicated by the following quoted from its brief:

"This section (section 46) is the only section in the act that makes any reference whatsoever to the powers, duties, or limitations of the commission in regard to labeling, marking or designations of alcoholic liquors.  The section is limited to adulterated and misbranded alcoholic liquors.  In regard to branding or misbranding the sole test found in this section and consequently in the entire act is that of the word 'plainly.'  Nowhere else in this section or in the entire act is the commission given any power to set up or establish any other test as to what shall constitute misbranded alcoholic liquor.  Nowhere in this section or any place in the act is the commission given the power to pass upon labels for any other purpose than possibly for the purpose of determining whether a certain label constitutes misbranding.

*Nowhere in this section or in the entire act is the commission given the power to disapprove a plainly labeled alcoholic liquor.''* \* \* \*

''Even if the commission has the power to require that labels be submitted for approval, it is the contention of the plaintiff that once a label has been submitted to the commission, the commission is limited in its consideration of such label as to whether it shall be approved or disapproved, by the Constitution of the State of Michigan, the liquor control act, and section 46 of that act, to the sole question of whether the submitted label constitutes a *plain label* and that if an alcoholic liquor carrying such a label would constitute a plainly labeled alcoholic liquor.''

Plaintiff's contention is not tenable. The construction it seeks to place upon the statute is entirely too restricted. Except as limited or defined by statute, the Constitution itself vests the statutory commission with plenary power to control alcoholic beverage traffic in this State. This appears from the constitutional provision hereinbefore quoted. And such is our holding in *Scott* v. *Township Board of Arcadia Township,* 268 Mich. 170; *Noey* v. *City of Saginaw,* 271 Mich. 595.

By enacting the second paragraph of section 1 of the liquor control statute, the legislature embodied the constitutional provision above quoted in the statute. This paragraph reads:

''Except as by this act otherwise provided, the commission shall have the sole right, power and duty to control the alcoholic beverage traffic and traffic in other alcoholic liquor within the State of Michigan, including the manufacture, importation, possession, transportation and sale thereof.'' (Act No. 8, § 1, Pub. Acts 1933 [Ex. Sess.] [Stat. Ann. § 18.971]).

The constitutional provision that the commission ''shall exercise complete control of all alcoholic

beverage traffic within this State, including the re-
tail sales thereof," is limited only by express provi-
sions or necessary implications embodied in the leg-
islative act (as amended) by which the commission
was created and its powers, duties and limitations
prescribed.

There can be no doubt as to the power of the
commission to require proper labeling of any al-
coholic beverage sold in this State.   Clearly this is
but a phase of the proper control of "the alcoholic
beverage traffic" and of "the retail sales thereof"
in this State; and the commission is amply justified
in declining to give its approval to any label which
is of such a character that it may readily lead to
confusion and the possible perpetration of fraud in
the sales of alcoholic liquors.   Plaintiff's label is so
similar in one of its outstanding features to the
Goebel label, which had been previously approved
by the commission, that refusal to approve plain-
tiff's label was fully justified.   It is no more than a
proper and a reasonable regulation of the traffic in
alcoholic beverages, including the retail sales there-
of, that the commission should decline to approve
a label which would result in a beverage sold by one
licensee being confused with that of another licensee.
Even if plaintiff's contention were adopted, *i. e.,*
that the sole test for approval is whether "the sub-
mitted label constitutes a *plain* label," the commis-
sion, under the circumstances of this case, would be
justified in withholding approval.   This is true be-
cause a label which may and probably will lead to
confusion as between various alcoholic beverages
which are manufactured and sold by different li-
censees is not a "plain" label.

Our decision herein is not to be construed as hold-
ing that the ruling of the commission on the right
of an applicant to use a proposed label is a final

adjudication of claimed property rights in a trade name or trade mark. Instead, one having vested rights in a trade name, trade mark, or a trade label has, as against an infringer, his remedy in a proper forum. And the adjudication of such an issue would clearly have a bearing upon the duty of the commission in a subsequent application for approval of a label containing such trade name or trade mark.

In arriving at the conclusion hereinbefore indicated we have not overlooked plaintiff's contention that the commission has not embodied in its rules any specific tests or regulations governing it in the exercise of its power to approve or disapprove a proposed label. Such a multiplicity and diversity of circumstances may obviously enter into this phase of the commission's control that it would be quite impossible to formulate rules or regulations governing every detail. To meet this situation the liquor control commission very properly provided by rule that in advance of its use in this State any label proposed to be used by a licensee should be submitted for the commission's approval. In one of the briefs it is urged that, ''The label of one applicant may be approved while the approval is denied to another without the assignment of reasons for the rulings,'' and that by its arbitrary and capricious action the commission may deprive an applicant of ''equal protection of the laws.''[*] There has been no such action in the instant case. It is to be presumed that a constitutionally constituted governmental body or agency will properly perform its duties. And in event of its arbitrary or capricious action one injured thereby is not without remedy. For example, under former statutes requiring saloon keepers to give bonds with sureties to be approved by desig-

---

[*] See U. S. Const. Am. 14, § 1.—REPORTER.

nated authorities, arbitrary refusal to approve a bond which was admittedly sufficient was quickly corrected by the courts. *Amperse* v. *Common Council of the City of Kalamazoo,* 59 Mich. 78; *Post* v. *Township Board of Sparta,* 63 Mich. 323; *Price* v. *Township Board of Oakfield Township,* 182 Mich. 216.

We are of the opinion that the section of the commission's rules and regulations hereinbefore quoted is ample. Plaintiff's petition is dismissed, with costs to defendant.

WIEST, SHARPE, CHANDLER and McALLISTER, JJ., concurred with NORTH, J.

BUSHNELL, J. (*dissenting*). Article 16, § 11, of the Constitution of 1908, as amended in 1932, provides that:

"The legislature may by law establish a liquor control commission, who, subject to statutory limitations, shall exercise complete control of the alcoholic beverage traffic within this State," et cetera.

The power of the liquor control commission under the constitutional proviso is subject to statutory limitations. *Scott* v. *Township Board of Arcadia Township,* 268 Mich. 170. See, also, *Dave's Place, Inc.,* v. *Liquor Control Com'n,* 277 Mich. 551, 555:

"It will be noted that the amendment gives to the legislature the right to impose such limitations as it may deem proper upon the control to be exercised by the commission." *Johnson* v. *Liquor Control Com'n,* 266 Mich. 682.

The legislature gave the commission control over adulterated or misbranded alcoholic liquor, and said that:

"For the purpose of this section alcoholic liquor shall be deemed to be misbranded when not plainly

labeled, marked or otherwise designated as shall be prescribed by the rules and regulations of the commission.'' Act No. 8, § 46, Pub. Acts 1933 (Ex. Sess.) (Stat. Ann. § 18.1017).

By no stretch of the imagination can the above language be said to include the power to determine matters of unfair competition, trade-mark infringement, or other situations which might arise out of claimed similarity between the labels of plaintiff, an Indiana corporation, and the Goebel Brewing Company, a Michigan corporation.

The attorney general argues in his brief:

''That Michigan manufacturers of beer require protection from unfair competitive conditions created by outstate manufacturers who import their beer into Michigan for sale, clearly appears from the record in this cause.''

The answer of the commission indicates that it assumed this to be its duty under the act, but we read nothing in the constitutional amendment adopted by the people in November of 1932, or in the act of the legislature, that would permit the commission to protect Michigan brewers against the competition of brewers of any other State. The power of the commission is limited by statute to preventing the sale, offering or exposing for sale, or having possession, within this State, of adulterated or misbranded liquors, and that alone.

The commission exceeded its statutory power. The writ of mandamus should issue, and it should be so ordered.

BUTZEL, C. J., and POTTER, J., concurred with BUSHNELL, J.