### ALSTON et al. v. SCHOOL BOARD OF CITY OF NORFOLK et al.

### No. 4623.

Circuit Court of Appeals, Fourth Circuit.

June 18, 1940.

Thurgood Marshall, of New York City, and William H. Hastie, of Washington, D. C. (Oliver W. Hill of Richmond, Va. and Leon A. Ranson, of Washington, D. C., on the brief), for appellants.

Alfred Anderson and Jonathan W. Old, Jr., both of Norfolk, Va. (William C. Coupland, of Norfolk, Va., on the brief), for appellees.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

PARKER, Circuit Judge.

This is an appeal in a suit instituted by Melvin O. Alston, a Negro school teacher of Norfolk, Va., and the Norfolk Teachers' Association, an association composed of the Negro school teachers of that city, against the School Board and the Superintendent of Schools of the city. The purpose of the suit is to obtain a declaratory judgment, to the effect that the policy of defendants in maintaining a salary schedule which fixes the salaries of Negro teachers at a lower rate than that paid to white teachers of equal qualifications and experience, and performing the same duties and services, on the sole basis of race and color, is violative of the due process

and equal protection clauses of the 14th amendment, and also to obtain an injunction restraining defendants from making any distinction on the ground of race or color in fixing the salaries of public school teachers in Norfolk. The suit was dismissed by the court below on the ground that Alston and the School Board were the only necessary parties to the cause and that Alston had waived such constitutional rights as he was seeking to enforce by having entered into a written contract with the School Board to teach for a year at the price fixed in the contract. On the appeal presented by the plaintiffs three questions arise: (1) whether upon the face of the complaint an unconstitutional discrimination is shown in the fixing of school teachers' salaries by the defendants; (2) whether rights of plaintiffs are infringed by such discrimination; and (3) whether plaintiffs have waived their right to complain of the discrimination by entering into contracts with the School Board for the current year.

On the first question, there can be no doubt but that the fixing of salary schedules for the teachers is action by the state which is subject to the limitations prescribed by the 14th Amendment. The Constitution of Virginia provides that the General Assembly shall establish and maintain an efficient system of public free schools throughout the state. Article IX, sec. 129. The General Assembly has established such a system. Virginia Code of 1936, chs. 33 and 35. The public schools of the City of Norfolk are under the direct control and supervision of the defendants, whose duty it is to employ teachers and provide for the payment of teachers' salaries. Virginia Code, ch. 33, secs. 656, 660, and ch. 35, sec. 786. While provision is made in the law for separate schools for white and colored persons, the positive duty is enjoined of maintaining these separate schools under the same general regulations as to management, usefulness and efficiency. Virginia Code, sec. 680. All teachers are required to hold teaching certificates in accordance with the rules of certification of the State Board of Education. Virginia Code, ch. 33, sec. 660 and ch. 35, sec. 786. White and Negro teachers must meet the same requirements to receive teachers certificates from the Board of Education and upon qualifying are issued identical certificates.

The allegations of the complaint as to discrimination, which are denied in the answer, but which must be taken as true on the motion to dismiss, are as follows:

"11. Defendants over a long period of years have consistently pursued and maintained and are now pursuing and maintaining the policy, custom, and usage of paying Negro teachers and principals in the public schools in Norfolk less salary than white teachers and principals in said public school system possessing the same professional qualifications, certificates and experience, exercising the same duties and performing the same services as Negro teachers and principals. Such discrimination is being practiced against the plaintiffs and all other Negro teachers and principals in Norfolk, Virginia, and is based solely upon their race or color.

"12. The plaintiff Alston and all of the members of the plaintiff association and all other Negro teachers and principals in public schools in the City of Norfolk are teachers by profession and are specially trained for their calling. By rules, regulations, practice, usage and custom of the Commonwealth acting by and through the defendants as its agents and agencies, the plaintiff Alston and all of the members of the plaintiff association and all other Negro teachers and principals in the City of Norfolk are being denied the equal protection of the laws in that solely by reason of their race and color they are being denied compensation from public funds for their services as teachers equal to the compensation provided from public funds for and being paid to white teachers with equal qualifications and experience for equivalent services pursuant to rules, regulations, custom and practice of the Commonwealth acting by and through its agents and agencies, the School Board of the City of Norfolk and the Superintendent of Schools of Norfolk, Virginia.

"13. Plaintiff, Melvin O. Alston, has been employed as a regular male teacher by the defendants since September, 1935, and is in his fifth year of experience as a regular teacher in the Booker T. Washington High School, a public high school maintained and operated under the direct control, supervision, rules and regulations of the defendants. He successfully completed the course of instruction provided at Virginia State College for Negroes, an accredited college maintained and operated by the State of Virginia for the instruction and preparation of Negroes as teachers in the public schools of the State. He holds

a Collegiate Professional Certificate, the highest certificate issued by the Virginia State Board of Education for teaching in the public high schools of Virginia. In order to qualify for this certificate plaintiff has satisfied the same requirements as those exacted of all other teachers, white as well as Negro, qualifying therefor, and he exercises the same duties and performs services substantially equivalent to those performed by other holders of the said certificate, white as well as Negro, yet all white male teachers in Norfolk who hold the said certificate with equal and less experience receive salaries much larger than the salary paid the plaintiff.

"14. White male high school teachers employed by defendants whose qualifications, certification, duties and services are the same as plaintiff's are being paid by defendants a minimum annual salary of Twelve Hundred ($1200.00) Dollars.

"15. Plaintiff Alston is being paid by the defendants for his services this school year as a regular male high school teacher as aforesaid an annual salary of Nine Hundred and Twenty-one ($921.00) Dollars, being the amount fixed by defendants for Negro male high school teachers in their fifth year of teaching experience and solely because of the practice, usage and custom complained of in paragraph 11 of this complaint, and by the operation of the discriminatory salary schedule described in paragraphs 16 and 17 of this complaint the plaintiffs have been, are, and unless relief shall be granted by this Honorable Court as hereinafter prayed, will continue to be denied, solely by reason of race and color the opportunity to receive a higher salary equal to that paid to any white teachers similarly situated.

"16. Pursuant to the policy, custom and usage set out in paragraph 12 the defendants acting as agents and agencies of the Commonwealth of Virginia have established and maintained a salary schedule used by them to fix the amount of compensation for teachers and principals in the public schools of Norfolk which discriminates against plaintiffs solely because of their race or color. All teachers and principals in the public schools of Norfolk, including the plaintiffs, have been, are being and will continue to be paid by defendants pursuant to the following salary schedule adopted, maintained and being enforced by the defendants for the school year 1939-1940:

| | Salaries now being paid teachers new to the system. | Maximum salary being paid (affecting only those in system before increment plan was discontinued.) |
|---|---|---|
| *Negro* | | |
| Elementary Normal Certificate | $ 597.50 | $ 960.10 |
| Degree | 611.00 | 960.00 |
| High School Women | 699.00 | 1,105.20 |
| Men | 784.50 | 1,235.00 |
| *White* | | |
| Elementary Normal Certificate | 850 00 | 1,425.00 |
| Degree | 937.00 | 1,425.00 |
| High School Women | 970.00 | 1,900.00 |
| Men | 1,200.00 | 2,185.00 |

The practical application of this salary schedule has been, is, and will be to pay Negro teachers and principals of equal qualifications, certification and experience with white teachers and principals less compensation from public funds solely on account of their race or color."

"19. The salaries of all teachers and principals in the public schools of the City of Norfolk, including the salaries of petitioners, are paid out of the public school fund. This fund derives from two sources: The Commonwealth of Virginia and the City of Norfolk (Virginia School Code, Chapter 33, Section 646); all of said public school fund is raised by means of taxation upon the inhabitants of Virginia and their property (Constitution of Virginia, Article IX, Sections 135, 136; Virginia School Code, Chapter 33, Sections 657, 698, 699; Chapter 35, Section 782). Pursuant to these statutes all that portion of the public school fund which derives directly from the state is used exclusively for the payment of teachers' salaries (Virginia School Code, Chapter 33, Section 701)."

That an unconstitutional discrimination is set forth in these paragraphs hardly admits of argument. The allegation is that the state, in paying for public services of the same kind and character to men and women equally qualified according to standards which the state itself prescribes, arbitrarily pays less to Negroes than to white persons. This is as clear a discrimination on the ground of race as could well be imagined and falls squarely within the inhibition of both the due process and the equal protection clauses of the 14th

Amendment. As was said by Mr. Justice Harlan in Gibson v. Mississippi, 162 U.S. 565, 591, 16 S.Ct. 904, 910, 40 L.Ed. 1075: "Underlying all of those decisions is the principle that the constitution of the United States, in its present form, forbids, so far as civil and political rights are concerned, discrimination by the general government, or by the states, against any citizen because of his race. All citizens are equal before the law. The guaranties of life, liberty, and property are for all persons, within the jurisdiction of the United States, or of any state, without discrimination against any because of their race. Those guaranties, when their violation is properly presented in the regular course of proceedings, must be enforced in the courts, both of the nation and of the state, without reference to considerations based upon race."

Dealing with the precise question here involved, Judge Chesnut, in Mills v. Lowndes, D. C., 26 F.Supp. 792, 801, said: "While the State may freely select its employes and determine their compensation it would, in my opinion, be clearly unconstitutional for a state to pass legislation which imposed discriminatory burdens on the colored race with respect to their qualifications for office or prescribe a rate of pay less than that for other classes solely on account of race or color. If therefore the state laws prescribed that colored teachers of equal qualifications with white teachers should receive less compensation on account of their color, such a law would clearly be unconstitutional."

In the later case of Mills v. Board of Education of Anne Arundel County, D.C, 30 F.Supp. 245, Judge Chesnut applied the principle so stated in holding that a discrimination as to pay of teachers in white and colored schools was violative of the constitutional provision, and that a colored teacher might invoke the power of the court so to declare. This we think is in accord with a long line of decisions which condemn discrimination on account of race in the exercise of governmental power by a state or its agencies. Thus, in Strauder v. West Virginia, 100 U.S. 303, 25 L.Ed. 664, exclusion of colored persons from service on petit juries was condemned as violative of the constitutional provision. In Pierre v. Louisiana, 306 U.S. 354, 59 S.Ct. 536, 83 L.Ed. 757, the same holding was made with respect to grand juries. In Nixon v. Condon, 286 U.S. 73, 52 S.Ct. 484, 76 L.Ed. 984, 88 A.L.R. 458, and Nixon v. Herndon, 273 U.S. 536, 47 S.Ct. 446, 71 L.Ed. 759, discriminations with respect to participating in party primaries were condemned. In Lane v. Wilson, 307 U.S. 268, 59 S.Ct. 872, 83 L.Ed. 1281, and Guinn v. United States, 238 U.S. 347, 35 S.Ct. 926, 59 L.Ed. 1340, L.R.A.1916A, 1124, like holdings were made with respect to discrimination relating to the right to participate in elections. Discriminations with respect to the right to own and occupy property were condemned in Buchanan v. Warley, 245 U.S. 60, 38 S.Ct. 16, 62 L.Ed. 149, L.R.A.1918 C, 210, Ann.Cas. 1918A, 1201; with respect to Pullman accommodations on railroads, in McCabe v. Atchison, Topeka & S. F. R. Co., 235 U.S. 151, 35 S.Ct. 69, 59 L. Ed. 169; with respect to educational facilities, in Missouri ex rel Gaines v. Canada 305 U.S. 337, 59 S.Ct. 232, 83 L.Ed. 208; with respect to the division of school funds in Davenport v. Cloverport, D. C., 72 F. 689; and with respect to the pursuit of a trade or vocation, in Chaires v. City of Atlanta, 164 Ga. 755, 139 S.E. 559, 55 A.L.R. 230.

We come, then, to the second question, i. e., do plaintiffs as Negro teachers holding certificates qualifying them to teach in the public schools of Norfolk have rights which are infringed by the discrimination of which they complain? The answer to this must be in the affirmative. As teachers holding certificates from the state, plaintiffs have acquired a professional status. It is true that they are not entitled by reason of that fact alone to contracts to teach in the public schools of the state; for whether any particular one of them shall be employed to teach is a matter resting in the sound discretion of the school authorities; but they are entitled to have the compensation for positions for which they may apply, and which will unquestionably be awarded to some of them, fixed without unconstitutional discrimination on account of race. As pointed out by Judge Chesnut, in Mills v. Lowndes, supra, they are qualified school teachers and have the civil right, as such, to pursue their profession without being subjected to discriminatory legislation on account of race or color. It is no answer to this to say that the hiring of any teacher is a matter resting in the discretion of the school authorities. Plaintiffs, as teachers qualified and subject to employment by the state, are entitled to apply for the positions and to

have the discretion of the authorities exercised lawfully and without unconstitutional discrimination as to the rate of pay to be awarded them, if their applications are accepted.

Nor do we think that the fact that plaintiffs have entered into contracts with the school board for the current year at the rate fixed by the discriminatory practice precludes them from asking relief. What the effect of such contracts may be on right to compensation for the current year, we need not decide, since plaintiffs are not insisting upon additional compensation for the current year and their prayer for relief asks a broad declaration of rights and injunctive relief for the future. As qualified teachers holding certificates, they have rights as above indicated which are not confined to the contract for the current year, i. e, the right to apply for positions in the future and to have the Board award the positions without unconstitutional discrimination as to the rate of pay.

The defendants take the position that no one but a teacher holding a contract with the Board has any such interest in the rate of pay as would give him standing to sue concerning it, and that he cannot sue because he has waived the unconstitutional discrimination by entering into the contract. If this were sound, there would be no practical means of redress for teachers subjected to the unconstitutional discrimination. But it is not sound. As pointed out in Frost Trucking Co. v. Railroad Comm., 271 U.S. 583, 594, 46 S.Ct. 605, 607, 70 L.Ed. 1101, even in the granting of a privilege, the state "may not impose conditions which require the relinquishment of constitutional rights. If the state may compel the surrender of one constitutional right as a condition of its favor, it may, in like manner, compel a surrender of all. It is inconceivable that guaranties embedded in the Constitution of the United States may thus be manipulated out of existence." See, also, Union Pac. R. Co. v. Public Service Comm., 248 U.S. 67, 69, 70, 39 S.Ct. 24, 63 L.Ed. 131; Hanover Ins. Co. v. Harding 272 U.S. 494, 507, 47 S.Ct. 179, 71 L.Ed. 372, 49 A.L.R. 713. But as stated above, the waiver could not extend beyond the terms of the contract for the current year, in any event, and the relief asked is for the declaration and protection of rights which extend beyond any present employment.

We should say, too, that we have no doubt as to the Norfolk Teachers Association's being a proper party to the suit. According to the complaint, it is a voluntary unincorporated association and "is composed of Negro teachers and principals in the public colored schools of Norfolk"; and the right of such an association to sue in its common name for the purpose of enforcing substantive rights under the Constitution of the United States is provided for under the Rules of Civil Procedure. Rule 17(b), 28 U.S.C.A. following section 723c. The point is not important, however, as the suit is brought as a class suit and the members of the association belong to the same class as the plaintiff Alston. Likewise, there can be no question as to the propriety of joining the Superintendent of Schools with the Board as a party defendant, as teachers are employed on the recommendation of the Superintendent (Va. Code sec. 660); he requests the City Council to fix the tax levy so as to net the amount necessary for the operation of the schools (Va. Code sec. 657); and he is named by the statute as one of those charged with the administration of the schools (Va. Code sec. 611).

For the reasons stated, the order appealed from will be reversed and the cause will be remanded for further proceedings not inconsistent herewith. If the allegations of the complaint are established, plaintiffs will be entitled to a declaratory judgment to the effect that the discriminatory policy complained of is violative of their rights under the Constitution and to an injunction restraining defendants from making any discrimination on the grounds of race or color in fixing salaries to be paid school teachers after the current fiscal year. To avoid confusion and inconvenience in the preparation of the budget and the making of contracts for the ensuing year, we have given immediate consideration to the case. The mandate will issue forthwith, to the end that prompt action may be taken by the court below.

Reversed.