GLICKER v. MICHIGAN LIQUOR
CONTROL COMMISSION.
No. 10185.

Circuit Court of Appeals, Sixth Circuit.
Feb. 12, 1947.

Arnold F. Zeleznik, of Detroit, Mich., for appellant.

Charles M. A. Martin, of Detroit, Mich. (Foss O. Eldred, of Ionia, Mich., and Edmund E. Shepherd, of Detroit, Mich., on the brief), for appellee.

Before HICKS, McALLISTER and MILLER, Circuit Judges.

MILLER, Circuit Judge.

The plaintiff-appellant, Anna Glicker, appeals from an order of the District Court which sustained a motion of the defendant-appellee, Michigan Liquor Control Commission, and dismissed her complaint filed therein for failure to state a cause of action.

The complaint alleges that the appellant was a citizen of the State of Michigan and was the owner of a Class C license under state law to sell liquor in Detroit; that the license after notice and hearing was suspended by one of the members of the Michigan Liquor Control Commission because appellant had sold liquor to minors in violation of the state law; that on appeal to the full Commission appellant's license was unlawfully and illegally revoked by the Commission; that said action on the part of the Commission was intentional and deliberate discrimination against her on account of political reasons and was done deliberately for the purpose of treating the appellant in a different manner than any other owner of a Class C liquor license, and was in violation of her rights under the Fourteenth Amendment to the Constitution of the United States and Section 1979 of the Revised Statutes of the United States, Title 8 U.S.C.A. § 43. The appellant prayed for an order directing

HICKS, Circuit Judge, dissenting.

the defendant to renew her Class C license. The order of the District Court dismissing the petition is not accompanied by any opinion and does not refer to any authorities upon which the ruling is based. From a reading of appellee's brief herein in support of the order we assume that the District Judge based his ruling upon the principle that the right to sell liquor in the State of Michigan was not a privilege or immunity of a citizen of the United States within the meaning of Section 1 of the Fourteenth Amendment to the Constitution of the United States, and that therefore appellant's rights under that Amendment had not been abridged.

So much of Section 1 of the Fourteenth Amendment as is material provides as follows: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

Section 1979 Revised Statutes of the United States gives enforcement to the Amendment by the following provisions: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." It is settled that the District Courts of the United States are given jurisdiction by Title 28 U.S.C.A. § 41(14), over suits brought under the provisions of this Act without the allegation or proof of any jurisdictional amount. Douglas v. City of Jeannette, 319 U.S. 157, 161, 63 S.Ct. 877, 87 L.Ed. 1324.

We agree with the appellee's contention and the District Court's ruling that the appellant has no cause of action under that portion of the Fourteenth Amendment which prohibits a state from enforcing any law which abridges the privileges or immunities of citizens of the United States. "The protection extended to citizens of the United States by the privileges and immunities clause includes those rights and privileges which, under the laws and Constitution of the United States, are incident to citizenship of the United States, but does not include rights pertaining to state citizenship and derived solely from the relationship of the citizen and his state established by State law. In re Slaughter-House Cases, 16 Wall. 36, 74, 79, 21 L.Ed. 394; Maxwell v. Bugbee, 250 U.S. 525, 538, 40 S.Ct. 2, 5, 63 L.Ed. 1124; Prudential Insurance Co. v. Cheek, 259 U.S. 530, 539, 42 S.Ct. 516, 520, 66 L.Ed. 1044, 27 A.L.R. 27; Madden v. Kentucky, 309 U.S. 83, 90–93, 60 S.Ct. 406, 409, 410, 84 L.Ed. 590, 125 A.L.R. 1383." Snowden v. Hughes, 321 U.S. 1, Page 6, 64 S.Ct. 397, 400, 88 L.Ed. 497. The right to a license to sell intoxicating liquor is not a natural or fundamental right, nor a privilege incident to national citizenship. The regulation of the liquor traffic in any state is exclusively under the police power of that particular state. Crowley v. Christensen, 137 U.S. 86, 91, 11 S.Ct. 13, 34 L.Ed. 620; Giozza v. Tiernan, 148 U.S. 657, 661, 662, 13 S.Ct. 721, 37 L.Ed 599; Cronin v. Adams, 192 U.S. 108, 114, 24 S.Ct. 219, 48 L.Ed. 365; Sherlock v. Stuart, 96 Mich. 193, 196, 55 N.W. 845, 21 L.R.A. 580; Compare: Emmons v. Smitt, et al., 6 Cir., 149 F.2d 869, 872. Under its police power the State of Michigan has enacted what is popularly called the Michigan Liquor Control Statute, by which the Michigan Liquor Control Commission is authorized to issue licenses to sell intoxicating liquor. Act No. 8 of Public Acts of 1933, as amended; Terre Haute Brewing Co., Inc. v. Liquor Control Commission, 291 Mich. 73, 288 N.W. 339. Accordingly, appellant's right to a license to sell liquor in Michigan is not protected by the privileges and immunities clause of the Fourteenth Amendment.

The Fourteenth Amendment, however, does not stop with protecting the privileges or immunities of citizens of the United States. In the next succeeding

clause it also prohibits any state from depriving any person of life, liberty, or property without due process of law, and then following that, in a third entirely separate and independent provision it prohibits any state from denying to "any person within its jurisdiction the equal protection of the laws." The equal protection clause of the Fourteenth Amendment is a right in itself, separate and independent from the rights protected by the privileges and immunities clause of the Fourteenth Amendment. The privileges and immunities clause is restricted to citizens of the United States; the equal protection clause extends its protection to "any person" within the jurisdiction of the state. In Truax v. Corrigan, 257 U.S. 312, 42 S.Ct. 124, 66 L.Ed. 254, 27 A.L.R. 375, the Supreme Court considered this separate and independent protection given by the equal protection clause, discussing the matter at some length beginning in 257 U.S. at the bottom of page 331, 42 S.Ct. 129, 66 L. Ed. 254, 27 A.L.R. 375 of the opinion. The Court said—"The guaranty was aimed at undue favor and individual or class privilege, on the one hand, and at hostile discrimination or the oppression of inequality, on the other. It sought an equality of treatment of all persons, even though all enjoyed the protection of due process."

In Hartford Steam Boiler Inspection & Insurance Company v. Harrison, 301 U.S. 459, 57 S.Ct. 838, 839, 81 L.Ed. 1223, the Court pointed out that while the Fourteenth Amendment allows reasonable classification of persons, yet it forbids unreasonable or arbitrary classification or treatment, and wrote—"it may be said generally that the equal protection clause means that the rights of all persons must rest upon the same rule under similar circumstances * * * and that it applies to the exercise of all the powers of the state which can affect the individual or his property, including the power of taxation." In Sunday Lake Iron Company v. Township of Wakefield, 247 U.S. 350, 38 S.Ct. 495, 62 L.Ed. 1154, the Court said at page 352 of 247 U.S., at page 495 of 38 S.Ct., 62 L.Ed. 1154—"The purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against *intentional and arbitrary discrimination,* whether occasioned by express terms of a statute or by its 'improper execution through duly constituted agents." (Emphasis added.) The rule that intentional discrimination by a state against a person within its jurisdiction violates the equal protection clause of the Fourteenth Amendment, although it does not violate the section of the Amendment protecting the privileges and immunities of citizens of the United States, is recognized by the opinion in Snowden v. Hughes, supra, 321 U.S. 1, at page 8, 64 S.Ct. 397, at page 401, 88 L.Ed. 497, where it is stated—"The unlawful administration by state officers of a state statute fair on its face, resulting in its unequal application to those who are entitled to be treated alike, is not a denial of equal protection *unless there is shown to be present in it an element of intentional or purposeful discrimination.*" (Emphasis added.) On page 11 of 321 U.S., on page 402 of 64 S.Ct., 88 L.Ed. 497 the Court also said—"If the action of the Board is official action it is subject to constitutional infirmity to the same but no greater extent than if the action were taken by the state legislature. * * * Where discrimination is sufficiently shown, the right to relief under the equal protection clause is not diminished by the fact that the discrimination relates to political rights." After recognizing and approving the rule the Court declined to apply it in that case solely because the complaint failed to allege "purposeful discrimination" on the part of the defendants, holding that the allegations "willful" and "malicious" were insufficient to raise the issue of equal protection of the laws. Opinion, 321 U.S. at page 10, 64 S.Ct. 397, 88 L.Ed. 497. The dissenting opinion of two of the Justices also recognized the rule and thought that the allegations of the complaint sufficiently raised the issue. Numerous other cases fully sustain the rule that the constitutional rights provided by the equal protection clause of the Fourteenth Amendment to a person within the state are violated by intentional discriminatory action against him on the part of the State, acting either through its legislative body

or by administrative action of its officials, and that remedial action is provided therefor by Section 1979, Revised Statutes. The provisions of that section are not restricted to "privileges, or immunities of citizens of the United States," but include "rights * * * secured by the Constitution." See Connolly v. Union Sewer Pipe Co., 184 U.S. 540, 558, 559, 563, 22 S.Ct. 431, 46 L.Ed. 679; Rogers v. Alabama, 192 U.S. 226, 24 S.Ct. 257, 48 L.Ed. 417; Atchison, Topeka & Santa Fe Railway Co. v. Vosburg, 238 U.S. 56, 35 S.Ct. 675, 59 L.Ed. 1119, L.R.A.1915E, 953; Kentucky Finance Corporation v. Paramount Auto Exchange Corporation, 262 U.S. 544, 550, 551, 43 S.Ct. 636, 67 L.Ed. 1112; Power Manufacturing Co. v. Saunders, 274 U.S. 490, 494, 495, 47 S.Ct. 678, 71 L.Ed. 1165; Frost v. Corporation Commission, 278 U.S. 515, 49 S.Ct. 235, 73 L. Ed. 483; Yick Wo v. Hopkins, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220; Giozza v. Tiernan, supra, 148 U.S. 657, 662, 13 S.Ct. 721, 37 L.Ed. 599; Louisville Trust Co. v. Stone, 6 Cir., 107 F. 305; Alston v. School Board of City of Norfolk, 4 Cir., 112 F.2d 992, 995, 130 A.L.R. 1506; Favors v. Randall, D.C., 40 F.Supp. 743, 747; Bogni v. Perotti, 224 Mass. 152, 156, 157, 112 N.E. 853, L.R.A.1916F, 831; Henry Fischer Packing Co. v. Mattox, 262 Ky. 318, 90 S.W.2d 70.

▪ ▉ The ruling of the District Court can not be sustained on the principle that the regulation of the liquor traffic by the State is in the exercise of its police power and therefore not subject to the constitutional restrictions referred to, although there are state decisions to that effect. It is well settled under the decisions of the U. S. Supreme Court that a state police regulation is, like any other law, subject to the equal protection clause of the Fourteenth Amendment. Atchison, Topeka & Santa Fe Railway v. Vosburg, 238 U.S. 56, 59, 35 S.Ct. 675, 59 L.Ed. 1119, L.R.A.1915E, 953; Connolly v. Union Sewer Pipe Co., 184 U.S. 540, 558, 559, 563, 22 S.Ct. 431, 46 L.Ed. 679; see also Asher v. Ingels, D.C., S.D.Cal., 13 F.Supp. 654, 658, 659, and cases there cited; Compare Giozza v. Tiernan, supra, 148 U.S. 657, at page 662,

13 S.Ct. 721, 37 L.Ed. 599; Power Manufacturing Co. v. Saunders, supra, 274 U.S. 490, 494, 495, 47 S.Ct. 678, 71 L.Ed. 1165.

▉ We recognize the right of a state to regulate, or even prohibit, through the exercise of its police power, the pursuit of certain businesses and occupations which because of their nature may prove injurious or offensive to the public. Such regulation is not prohibited by the Fourteenth Amendment. Murphy v. California, 225 U.S. 623, 32 S.Ct. 697, 56 L.Ed. 1229, 41 L.R.A.,N.S., 153. But it is equally well settled that such regulation is not unlimited in scope, but is subject to the limitations imposed by that amendment. While the Federal Government does not have the right to regulate such matters, which are exclusively under the control and regulation of the state, yet it does have the right, by virtue of the Fourteenth Amendment, to prevent such regulation from being arbitrary or discriminatory. Allgeyer v. Louisiana, 165 U.S. 578, 17 S.Ct. 427, 41 L.Ed. 832; Adams v. Tanner, 244 U.S. 590, 37 S.Ct. 662, 61 L.Ed. 1336, L.R.A. 1917F, 1163, Ann.Cas.1917D, 973; Tyson & Brother United Theatre Ticket Officers v. Banton, 273 U.S. 418, 47 S.Ct. 426, 71 L.Ed. 718, 58 A.L.R. 1236; Power Manufacturing Co. v. Saunders, supra, 274 U.S. 490, 47 S.Ct. 678, 71 L.Ed. 1165; Frost v. Corporation Commission, supra, 278 U.S. 515, 49 S.Ct. 235, 73 L.Ed. 483. The rule is equally as applicable where the business or occupation being regulated is not a franchise or property right, but is merely a privilege granted or withheld by the state at its pleasure. Frost & Frost Trucking Co. v. Railroad Commission, 271 U.S. 583, 591– 594, 46 S.Ct. 605, 70 L.Ed. 1101, 47 A.L.R. 457.

▉ The fact that the appellant is in the liquor business does not release the state from the restrictions on its regulatory powers above referred to. It may authorize the state to impose more stringent regulations against those engaged in that business than are imposed against those engaged in other callings, "but it affords no justification for discriminating between persons similarly situated who may be,

or may desire to become, engaged in that calling." State ex rel. Galle v. City of New Orleans, 113 La. 371, 36 So. 999, 1003, 67 L.R.A. 70, 76, 2 Ann.Cas. 92; Chicago v. Netcher, 183 Ill. 104, 55 N.E. 707, 48 L.R.A. 261, 265, 75 Am.St.Rep. 93. In both of those cases discriminatory ordinances regulating the retail liquor business were declared invalid as violative of the provisions of the Fourteenth Amendment. The rule was well stated in Francis v. Fitzpatrick, 129 Conn. 619, 30 A.2d 552, 554, 145 A.L.R. 505, 507, as follows: "The business being one which admittedly may be dangerous to public health, safety and morals (cases cited) the scope of the legislature's power to regulate it is much broader than in the case of its regulation of an ordinary lawful business essential to the conduct of human affairs. 'In the one business no citizen has an absolute right to engage; in the other all citizens have the right, and an equal right, to engage. The difference is vital'. (Cases cited.) Nevertheless, the police power of the state, like other governmental authority, is to be used for the common welfare, impartially and without unreasonable discrimination. (Cases cited.) Accordingly, while as between liquor selling and other callings less potentially harmful to the public the legislature may discriminate, there is no warrant for unjustly discriminating between those persons who may be, or may desire to become, engaged in the same calling of selling liquor." The opinion is followed by an annotation in 145 A.L.R. 509 showing many cases, involving licensing of the liquor business, including Francis v. Fitzpatrick, supra, where the rule was recognized but the statute or ordinance involved held valid because the regulatory conditions imposed were not unreasonable or arbitrary. In our present case the arbitrary and discriminatory action of the State Liquor Commission is admitted by the motion to dismiss.

■■■■■■ In considering the motion to dismiss we are controlled by the allegations of the complaint. It specifically alleges that the Commission acted "unlawfully, fraudulently, wilfully and illegally" and "intentionally and deliberately discriminated against" her, and that its action "was wilful, deliberate and intended solely for a political purpose," which is further described therein in detail, and that the revocation of her license "was done purposely and with the thought of treating this plaintiff in a different manner than any other owner of a Class C liquor license." We believe that those allegations are sufficient to state a cause of action under the equal protection clause of the Fourteenth Amendment and Section 1979 Revised Statutes. Whether or not the proof offered at the trial will sustain such allegations is a different question.

■■■■ Appellee makes no contention on this appeal that the action of the Commission is not the action of the State within the meaning of the Fourteenth Amendment, although there is support for such a contention. Barney v. City of New York, 193 U.S. 430, 24 S.Ct. 502, 48 L.Ed. 737; Opinion of Circuit Court of Appeals, 7th Circuit, in Snowden v. Hughes, 132 F.2d 476, ruling affirmed on different ground in 321 U.S. 1, 13, 64 S.Ct. 397, 88 L.Ed. 497. Concurring opinion of Mr. Justice Frankfurter in Snowden v. Hughes, supra, 321 U.S. 1, 16, 17, 64 S.Ct. 397, 88 L.Ed. 497. However, we believe that the rule as announced in Barney v. City of New York has not been followed by the Supreme Court in its later decisions, and that the present weight of authority does not support it. Snowden v. Hughes, supra, 321 U.S. 1, at page 13, 64 S.Ct. 397, 88 L.Ed. 497; Raymond v. Chicago Union Traction Co., 207 U.S. 20, 28 S.Ct. 7, 52 L.Ed. 78, 12 Ann. Cas. 757; Home Telephone & Telegraph Co. v. Los Angeles, 227 U.S. 278, 33 S.Ct. 312, 57 L.Ed. 510; Screws v. United States, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495, 162 A.L.R. 1330; Alston v. School Board of City of Norfolk, supra, 4 Cir., 112 F.2d 992, 994. The action of the appellee Liquor Commission in the present case is accordingly considered as the action of the State.

The judgment of the District Court is reversed, and the case remanded for further proceedings consistent with the views expressed herein.

HICKS (dissenting).

I cannot concur. Appellant's complaint is that the Michigan Liquor Control Commission arbitrarily denied her a license to sell intoxicating liquor and upon this averment she sought an order from the District Court directing the Commission to renew her license. The District Court dismissed the complaint for lack of jurisdiction to entertain it and this court reverses that decree.

As I understand the opinion, the court believes that the averments of the complaint that appellee deliberately and intentionally discriminated against appellant in denying her a license, are sufficient to state a cause of action under the equal protection clause of the Fourteenth Amendment and the Civil Rights Act. The equal protection clause is simply a guaranty against encroachment by the state upon the fundamental rights belonging to a citizen of the United States as such and the Civil Rights Act was designed to protect those rights.

I concur in the following statement in the opinion, to wit: "The right to a license to sell intoxicating liquor is not a natural or fundamental right, nor a privilege incident to national citizenship. The regulation of the liquor traffic in any state is exclusively under the police power of that particular state." My difficulty is that I cannot see how the equal protection clause and the Civil Rights Act can be called upon by appellant to enforce a right or privilege which she never had under the Constitution. It seems illogical to say that the District Court should inquire whether the Commission acted arbitrarily in granting to one and denying to another a privilege which neither of them fundamentally possessed. If every citizen of the United States had a natural right to sell intoxicating liquor and the state should undertake to withhold that right from one and grant it to another, it would then be time to consider the equal protection clause, but we have no such case.

I think that those and only "those who are entitled to be treated alike", Snowden v. Hughes, 321 U.S. at page 8, 64 S.Ct. 401, 88 L.Ed. 497, in their fundamental rights may invoke the guaranty of the equal protection clause and the Civil Rights Act, otherwise we may anticipate that the dockets of the district courts will be filled with cases where nothing more is involved than whether the state has acted arbitrarily in any controversy that might exist between it and one of its citizens.

I do not think it necessary to determine the difficult question whether appellee was an instrumentality of the state, but I should think that the State of Michigan had, through its laws and judicial procedure, sufficiently protected itself against any untoward result of arbitrary action by its Liquor Commission.